# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

v.

AARON HARRIS,
*Defendant*.

No. 3:99-cr-264-4 (VAB)

## RULING AND ORDER ON FIRST STEP ACT MOTION FOR IMMEDIATE RELEASE OR RESENTENCING

Aaron Harris ("Defendant") moves for his immediate release or resentencing under Section 404 of the recently-enacted First Step Act. *See* First Step Act Mot. for Immediate Release or Resentencing, ECF No. 2576 (Sept. 10, 2019) ("Def.'s Mot."); *see also* Mem. in Support of Def.'s Mot., ECF No. 2605 (Oct. 11, 2019) ("Def.'s Mem."). Mr. Harris is currently serving a life sentence.

The United States of America (the "Government") has opposed Mr. Harris's motion. Government's Response to Def.'s Mem., ECF No. 2620 (Nov. 25, 2019) ("Gov't Opp.").

For the reasons explained below, the Court (1) **GRANTS** the motion; (2) **ORDERS** that Mr. Harris's sentence of incarceration be **REDUCED** to **TIME SERVED**; and (3) **IMPOSES** a term of supervised release of **FIVE (5) YEARS**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Because of his involvement with and leadership of an extensive and violent drug trafficking enterprise in Bridgeport, Connecticut, in the late 1990s, Mr. Harris has been in federal custody since February 22, 2000. Presentence Report, ECF No. 2580-2 (Feb. 22, 2001) ("2001 PSR").

1

On November 7, 2000, a federal grand jury indicted Mr. Harris and other alleged members of the drug trafficking enterprise on one count of conspiracy to possess with intent to distribute heroin, cocaine, and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Second Superseding Indictment, ECF No. 455 (Nov. 7, 2000).

On December 4, 2000, after an almost three-week trial before the Honorable Alan H. Nevas of the United States District Court for the District of Connecticut (this "District"), a jury convicted Mr. Harris of violating 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), and 846, Conspiracy to Distribute and Distribution of Heroin, Cocaine, and Cocaine Base (Count One). Jury Verdict Form, ECF No. 2580-9 at 1 (Sept. 20, 2019). The jury assigned to Mr. Harris a quantity of 1000 grams or more of heroin, *id.* at 2; 5000 grams or more of cocaine, *id.*; and 50 grams or more of cocaine base, *id.* at 3.

On April 5, 2001, Judge Nevas sentenced Mr. Harris to the maximum of life imprisonment and a special assessment of $100. Judgment, ECF No. 649 (Apr. 5, 2001) (text order); *see also* Judgment, ECF No. 2580-6 (Sept. 20, 2019) (paper judgment).

On April 16, 2001, Mr. Harris appealed his conviction and sentence. Notice of Appeal, ECF No. 679 (Apr. 16, 2001).

On March 11, 2005, the U.S. Court of Appeals for the Second Circuit (the "Second Circuit") affirmed the judgment and sentence, but remanded Mr. Harris's case for resentencing consistent with *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). *United States v. Jones*, No. 01-1240-cr, General Docket at 7-8 (Mar. 11, 2005).

On May 30, 2007, Judge Nevas held a resentencing hearing, and re-imposed a sentence of life imprisonment and a $100 special assessment. Minute Entry, ECF No. 2199 (May 30, 2007); *see also* Amended Judgment, ECF No. 2201 (June 11, 2007). At resentencing, Judge

Nevas also imposed a five-year term of supervised release and a fine of $25,000. Amended

Judgment at 1. In re-imposing the life sentence, Judge Nevas applied for the first time the murder

cross reference to U.S.S.G. § 2A1.1, and he also provided an additional statement of reasons for

his sentence:

> [B]ased upon the evidence that this court heard at the trial of a codefendent [sic], Quinne Powell, . . . the court finds by a preponderance of the evidence that Kevin Guiles was murdered . . . and that the defendant was involved in that murder.
>
> [E]ven if the court did not apply the § 2D1.1(d) (1) cross reference to § 2A1.1 the court would apply § 2D1.1(c) (1) to impose the same sentence of life imprisonment . . . because [Mr. Harris] was found guilty of a violation of 21 U.S.C. §§ 841 (a)(1) and 846 and this violation involved more than 1.5 kilograms of cocaine base. . . .
>
> Finally, even if the court incorrectly imposed a sentence of life imprisonment under either the § 2D1.1(d) (1) cross reference or § 2D1.1(c) (1), the court would have imposed a term of life imprisonment as a non-guidelines sentence, after considering all of the factors in 18 U.S.C. § 3553(a), with a strong emphasis on the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment as required under 18 U.S.C. § 3553(a) (2) (A).

Addendum to Amended Judgment, ECF No. 2201 at 1-3 (June 11, 2007); *see also* Resentencing

Tr., ECF No. 2198 at 103:10-16 (May 30, 2007) ("Finally, the Court would find that even if the

Court is incorrect in the guideline sentence which it is about to impose, the Court would have

imposed a non-guideline sentence, considering all the factors in [§] 3553(a).").

Judge Nevas did not articulate any findings regarding Mr. Harris's current ability to pay

the new fine of $25,000, besides adopting the Government's view of his purported wealth. *Cf.*

Sentencing Tr., ECF No. 809 at 29:5-6 (Apr. 5, 2001) ("The Court imposes no fine, makes a

finding that he's unable to pay a fine.").

On May 30, 2007, Mr. Harris again appealed his conviction and sentence. Notice of Appeal, ECF No. 2202 (May 30, 2007).

On December 18, 2008, the Second Circuit again affirmed Mr. Harris's conviction and sentence. Mandate of USCA, ECF No. 2267 (Dec. 18, 2008).

Over the years, Mr. Harris has pursued various forms of relief, all of which were unsuccessful. Ruling Denying Motion to Reduce Sentence re Crack Cocaine Offense, ECF No. 2399 (June 20, 2013); Order Granting Motion to Withdraw Motion for Reconsideration, ECF No. 2407 (Oct. 18, 2013); Order, ECF No. 2411 (Nov. 1, 2013); Order Denying Motion for Reconsideration, ECF No. 2440 (Oct. 19, 2015); Mandate of USCA, ECF No. 2452 (Sept. 1, 2016); *see also* Motion to Reduce Sentence – USSC Amendment, ECF No. 2450 (July 21, 2016) (pending before this Court); Motion to Reduce Sentence – USSC Amendment, ECF No. 2461 (May 30, 2017) (same).

On December 21, 2018, Congress passed, and the President of the United States, Donald J. Trump, signed into law, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (hereafter, the "First Step Act"), which "made retroactive some provisions of the Fair Sentencing Act [of 2010, Pub. L. 111-220; 124 Stat. 2372]." *United States v. Bobby Medina*, No. 3:05-cr-58 (SRU), 2019 WL 3769598, at *2 (D. Conn. July 17, 2019).

On September 10, 2019, Mr. Harris moved for his immediate release or resentencing under Section 404 of the First Step Act. Def.'s Mot.

On September 20, 2019, the U.S. Probation Office ("Probation") filed a supplemental Pre-Sentencing Report, and took the position that Mr. Harris was not entitled to relief under the First Step Act. First Step Act of 2018 Addendum to the Presentence Report, ECF No. 2580

(Sept. 20, 2019) ("First Step Supp. PSR"); *see also* 2001 PSR, ECF No. 2580-2 (filed and prepared by Probation for Mr. Harris's original sentencing).

On October 11, 2019, Mr. Harris filed a memorandum in support of his motion. Def.'s Mem.

On November 25, 2019, the Government briefly opposed Mr. Harris's motion. Gov't Opp.

On December 2, 2019, Mr. Harris filed a reply in further support of his motion. Def.'s Reply Mem. in Support of Def.'s Mot., ECF No. 2619 (Nov. 22, 2019) ("Def.'s Reply").

On January 13, 2020, the Court held a hearing on the motion. Minute Entry, ECF No. 2637 (Jan. 13, 2020).

While incarcerated for almost the last twenty years, Mr. Harris has participated in numerous Bureau of Prisons programs and educational courses, and has only accumulated five disciplinary infractions. First Step Act Supp. PSR, Inmate Education Data, ECF No. 2580-11 (Sept. 17, 2019) ("Inmate Education Data"); *Compare* First Step Act Supp. PSR, Inmate Discipline Data, ECF No. 2580-10 (Sept. 17, 2019) ("Inmate Discipline Data"), *with* Ex. 9: Inmate Discipline Data, ECF No. 2621-2 (Dec. 2, 2019).

## II.  STANDARD OF REVIEW

Enacted in 2018, "Section 404 of the First Step Act authorizes retroactive application of Sections 2 and 3 of the Fair Sentencing Act to defendants who were sentenced for crack cocaine offenses committed prior to August 3, 2010." *United States v. Jamel Williams* ("*J. Williams*"), No. 03-CR-795, 2019 WL 3842597, at *2 (E.D.N.Y. Aug. 15, 2019). The Fair Sentencing Act of 2010 "reduced [future] statutory penalties for cocaine base[] offenses in order to alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Sampson,* 360

F. Supp. 3d 168, 169 (W.D.N.Y. Mar. 13, 2019) (internal citations and quotations omitted); *see also* Fair Sentencing Act of 2010, Pub. L. No. 220; 124 Stat. 2372 (hereafter "Fair Sentencing Act").

"Specifically, section 404 of the First Step Act permits 'a court that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.'" *United States v. Lawrence Williams* ("*L. Williams*"), No. 03-CR-1334, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019) (quoting First Step Act § 404).

"The First Step Act does not mandate sentence reductions for defendants" who are eligible for relief. *United States v. Glore*, 371 F. Supp. 3d 524, 527 (E.D. Wis. Mar. 6, 2019). Instead, "it leaves to the court's discretion whether to reduce their sentences." *Id.*; *see also United States v. Rose*, 379 F. Supp. 3d 223, 233 (S.D.N.Y. May 24, 2019) ("Congress clearly intended relief under § 404 of the First Step Act to be discretionary, as the Act specifically provides that '[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section.'" (quoting First Step Act, § 404(c))).

## III. DISCUSSION

The threshold issue is Mr. Harris's eligibility for relief, which requires the Court to determine first whether he was convicted of a "covered offense" under Section 404 of the First Step Act. If Mr. Harris is eligible for relief, the Court then must determine whether its discretion should be exercised to reduce his current sentence and, if so, by how much.

### A. Covered Offense

Section 404(a) of the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the

Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act § 404(a).

Nothing in this language restricts eligibility to defendants who were only convicted of a singular violation of a federal criminal statute whose penalties were modified by section 2 or section 3 of the Fair Sentencing Act. So long as a defendant was convicted of "a violation"—i.e., at least one violation—for which the penalties were modified by section 2 or 3 of the Fair Sentencing Act, he or she is eligible for relief.

As a multitude of district courts across the country have now recognized, "[i]t is the statute of conviction, rather than a defendant's actual conduct, that determines a defendant's eligibility under the First Step Act." *L. Williams*, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019) (citing *Rose*, 379 F. Supp. 3d at 228–31; *United States v. White*, No. 99-CR-628-04, 2019 WL 3228335, at *2 n.1 (S.D. Tex. July 17, 2019) (collecting forty-one district court cases reaching this conclusion); *see also United States v. Boulding*, 379 F. Supp. 3d 646, 651 (W.D. Mich. 2019) ("[E]ligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act. If so, the defendant is categorically eligible for consideration . . . ."); *but see White*, 2019 WL 3228335, at *5 ("Only a few courts have sided with the government's position that eligibility turns on the defendant's actual conduct, rather than the charged offense . . . .") (collecting cases).

Eligibility for relief under the First Step Act thus turns not on whether a conviction, even if it incorporates several violations of criminal statutes, is a "covered offense," but whether there is a conviction of a violation of a criminal statute for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act. Because the Fair Sentencing Act modified the

penalties for a crime involving 50 grams or more of crack cocaine, that crime is a "covered offense" for purposes of the First Step Act. First Step Act § 404(a); *see also* Fair Sentencing Act § 2(a)(1) ("striking '50 grams' and inserting '280 grams'").

The Government argues that Mr. Harris is ineligible for relief under the First Step Act, although it recognizes that courts in this District have "ruled against the Government on three legal issues that are relevant here":

> First, the Court has held that the statute of conviction determines a defendant's eligibility under § 404, rather than the defendant's relevant or actual conduct. Second, the Court has found that a multi-object drug conspiracy charging 50 grams of [sic] more of cocaine base is a "covered offense," even though § 404 did not alter the statutory penalties for the charged quantities of heroin and cocaine. Third, the Court has indicated that it may resentence a defendant who falls within the First Step Act's ambit.

Gov't Opp. at 2 (internal citations omitted). Thus, the Government "[r]ecogniz[es] that the Court is likely to follow these prior rulings" with respect to the legal conclusions.

The Court agrees.

First, as this Court and other courts in this District have previously held, the statute of conviction determines a defendant's eligibility under the First Step Act. *See United States v. Powell*, 99-cr-264-18 (VAB), 2019 WL 4889112, at *4 (D. Conn. Oct. 3, 2019) (collecting cases).

Before the Fair Sentencing Act's enactment, a jury convicted Mr. Harris and Judge Nevas sentenced him for an offense involving 50 grams or more of crack cocaine, the statutory penalties for which were modified by Section 2 of the Fair Sentencing Act. Thus, his conviction was premised, at least in part, on his violation of 21 U.S.C. § 841(b)(1)(A). Mr. Harris therefore was convicted of a "covered offense" and is eligible for relief under the First Step Act. *See Medina*, 2019 WL 3769598, at *4.

But eligibility for relief does not equal entitlement to relief. *See Rose*, 379 F. Supp. 3d at 233 ("Congress clearly intended relief under § 404 of the First Step Act to be discretionary, as the Act specifically provides that '[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section.'" (quoting First Step Act, § 404(c))); *see also United States v. Mack*, No. 00-323-02 (KSH), 2019 WL 3297495, at *12 (D.N.J. July 23, 2019) ("Finding these defendants eligible does not write off their responsibility for dealing in powder cocaine as well as dealing in crack cocaine. That constitutes a fact that bears on what relief these defendants are entitled to. What the Court finds now is that the jury's verdict does not disqualify the Mack defendants from consideration under § 404.").

Accordingly, having been convicted of a "covered offense," Mr. Harris is eligible for relief under the First Step Act.

### B. Scope of Relief

Having concluded that Mr. Harris is eligible for relief under the First Step Act, the Court now must determine whether a sentence reduction is appropriate and, if so, what reduction is warranted.

As this Court has previously held, while the Court need not reach the issue of whether the First Step Act authorizes a "plenary re-sentencing," as some courts have held, *see, e.g.*, *Medina*, 2019 WL 3769598, at *6,  unlike previous rounds of sentencing reform, "the First Step Act does not impose any artificial or guideline limits on a reviewing court." *Boulding*, 379 F. Supp. 3d at 651.

The Government argues that—assuming the Court finds it has the authority to reduce the defendant's sentence, as this Court has found with respect to Mr. Harris here—the Court's "exercise of discretion should be informed by the 18 U.S.C. § 3553(a) factors." Gov't Opp. at 2.

The Government notes particularly the need to avoid unwarranted sentencing disparities with Mr. Harris's co-defendants, some of whom have already had their sentences reduced by this Court under the First Step Act. *Id.* at 2-3. Finally, the Government emphasizes that "notwithstanding changes to the Guidelines in the intervening 18 years, a term of life imprisonment remains a Guidelines sentence." *Id.* at 4.

The Court agrees that its exercise of discretion should be informed by the § 3553(a) factors.

First, as the *Boulding* court and as many other courts have held, the First Step Act calls for a level of discretion that is previously unseen in sentencing statutes. It does not "impose any extrinsic limits on a sentencing court." *Mack*, 2019 WL 3297495, at *12.

As already discussed, Mr. Harris's drug sentence was determined from a single count of conviction, Count One, and involved three types of drugs: cocaine, cocaine base (crack cocaine), and heroin. Although Judge Nevas applied the murder cross reference at resentencing, he did not consider it at Mr. Harris's original sentencing:

> Let me just make it clear that the sentence that I'm going to impose is not based in any way, shape or form on the representations to the Court by Mr. Hernandez with respect to these other incidents [regarding Mr. Harris's alleged involvement in murders for which he was not charged or convicted]. They're - - they don't play a role at all in these calculations and I'm not considering them.

Sentencing Tr. at 24:8-13.

At resentencing, Judge Nevas also noted that his re-imposition of a life sentence was not based on the murder cross reference, but that he would re-impose a life sentence based on the guideline, or in the alternative, based on his analysis of the 18 U.S.C. § 3553(a) factors:

The court rejects the defendant's argument that application of the cross reference is inappropriate because he is still awaiting trial for this murder under the Seventh Superseding Indictment[1]. . . .

Therefore, the court finds that the defendant warrants a sentence of life imprisonment under the Sentencing Guidelines.

Alternatively, even if the court did not apply the § 2D1.1(d) (1) cross reference to § 2A1.1 the court would apply § 2D1.1(c) (1) to impose the same sentence of life imprisonment. . . .

Finally, even if the court incorrectly imposed a sentence of life imprisonment under either the § 2D1.1(d) (1) cross reference or § 2D1.1(c) (1), the court would have imposed a term of life imprisonment as a non-guidelines sentence, after considering all of the factors in 18 U.S.C. § 3553(a), with a strong emphasis on the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment as required under 18 U.S.C. § 3553(a) (2) (A).

Addendum to Amended Judgment at 1-3.

Probation calculated Mr. Harris's offense level as follows.

| | Offense Level Computation Conspiracy to Distribute Narcotics (Count One) |
|---|---|
| BASE Offense Level | 38 (based on possession and distribution of > 1.5 kilograms of cocaine base, U.S.S.G. § 2D1.1(c)(1)) |
| Specific Offense Characteristics | + 2 (based on firearm use as part of conspiracy by "underlings") |
| Adjustment for Role in Offense | + 4 (leader and organizer of five or more people) |
| Adjustment for Use of Minor | +2 (G. Jimenez was a minor when she first began selling drugs for Mr. Harris) |
| Adjustment for Obstruction of Justice | +2 (based on Mr. Harris's perjury during his trial testimony) |
| ADJUSTED Offense Level | 48 |

---

[1] These charges were ultimately dismissed. Government's Motion to Dismiss All Pending Counts of the Seventh Superseding Indictment, ECF No. 2322 (Feb. 23, 2010); *see also* Electronic Order, ECF No. 2323 (Mar. 16, 2010) (granting the motion to dismiss remaining counts in the Seventh Superseding Indictment against Mr. Harris).

2001 PSR ¶¶ 50-56.

There was no adjustment for acceptance of responsibility because Mr. Harris "was convicted by jury verdict after a trial during which he committed perjury," "and maintains his innocence in anticipation of his appeal." *Id.* ¶ 57. As a result, Probation determined the adjusted offense level to be 48 for Mr. Harris's single count of conviction. *Id.* ¶ 56. But because this level was in excess of 43, the Sentencing Guidelines required that Mr. Harris's offense level be reduced to 43. *Id.* ¶ 58 (citing U.S.S.G. ch. 5, pt. A, cmt. n.2). Probation determined Mr. Harris was in criminal history category I, as he had no prior convictions. *Id.* ¶¶ 60-61.

This Sentencing Guideline calculation resulted in a life sentence. *See* 2001 PSR ¶¶ 78-79 (stating that the statutory provisions provided a maximum term of imprisonment of life with a mandatory minimum of ten years, and that "the guideline sentence is life").

At Mr. Harris's original sentencing, Judge Nevas expressed his "frustration" and "displeasure with the sentencing guidelines," Sentencing Tr. at 28:7-8, and spoke of a singular life sentence.

For Mr. Harris's resentencing in 2007, Probation calculated his offense level as follows, based on the November 1, 2006 Sentencing Guidelines:

| | Offense Level Computation<br>Conspiracy to Distribute Narcotics (Count One) |
|---|---|
| BASE<br>Offense Level | 43<br>(based on a base offense level of 38 for possession and distribution of >1.5 kilograms of cocaine base, U.S.S.G. § 2D1.1(c)(1), and a base offense level of 43 in cases involving first degree murder, U.S.S.G. §§ 2D1.1(d)(1), 2A1.1(a)) |
| Specific Offense Characteristics | 0 |
| Adjustment for Role in Offense | + 4<br>(leader and organizer of five or more people) |
| Adjustment for Use of Minor | 0 |
| Adjustment for Obstruction of Justice | +2<br>(based on Mr. Harris's perjury during his trial testimony) |
| ADJUSTED Offense Level | 49 |

Second Addendum to the Presentence Report, ECF No. 2580-4 ¶¶ 68-74 (Mar. 6, 2007) (filed and prepared by Probation for Mr. Harris's resentencing on remand) ("2007 PSR Addendum"). Because the adjusted offense level of 49 was in excess of 43, the Sentencing Guidelines required that Mr. Harris's offense level be reduced to 43. *Id.* ¶ 76 (citing U.S.S.G. ch. 5, pt. A, cmt. n.2).

The Court therefore finds that the crack cocaine violation was addressed with heroin and cocaine as part of a single sentencing package, and that these offenses are inextricably related. The Court thus has the authority to reduce Mr. Harris's entire drug conspiracy sentence under the First Step Act. *See, e.g.*, *United States v. Triestman*, 178 F.3d 624, 630 (2d Cir. 1999) ("We therefore hold that the district court had the authority under § 2243 to dispose of the matter as law and justice require, and that this authority included the power to resentence Triestman to the overall term that he would have received on his interdependent sentencing package absent his unlawful § 924(c) conviction."); *see also id.* at 631–32 (collecting cases).

But this still leaves the question of whether—and how—the Court should exercise this discretion. The operative issue at this stage is whether there is a basis consistent with the First Step Act for reducing Mr. Harris's life sentence.

As for the murder cross reference from U.S.S.G. § 2D1.1(d)(1) to U.S.S.G. § 2A1.1(a) for cases involving first degree murder, the Court notes that Mr. Harris was only convicted of the single count for drug conspiracy and was never charged for murder or conspiracy to commit murder. *See United States v. Wernick*, 691 F.3d 108, 116 (2d Cir. 2012) ("[M]ere contemporaneity of uncharged conduct is not sufficient to render the uncharged conduct 'relevant' to the offense of conviction. . . . Uncharged acts must be relevant to 'the offense of conviction' under U.S.S.G. § 1B1.3."); *see also United States v. Ahders*, 622 F.3d 115, 122 (2d Cir. 2010) ("The words 'relevant conduct' suggest more is required than mere temporal proximity, as the other conduct must be 'relevant' and it must occur 'during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.'").

This Court thus need not decide whether Judge Nevas's application of the murder cross reference was proper, because Judge Nevas also based his sentence on the then-guideline of life or, in the alternative, his analysis of the factors under 18 U.S.C. § 3553(a).

Judge Nevas adopted the Presentence Report's finding that the drug quantity attributable to Mr. Harris was more than 1.5 kilograms of crack cocaine. 2001 PSR ¶ 50, *see also* Addendum to Amended Judgment at 2 (articulating the same quantity finding for resentencing).

Under today's Sentencing Guidelines, without the murder cross reference, Mr. Harris's base offense level for a crime involving 1.5 kilograms of crack cocaine—located on the Drug

Sentencing Table as 1.5 kilograms of powder cocaine, to account for the elimination of the crack-powder cocaine disparity[2]—is 24. *See* U.S.S.G. § 2D1.1(c)(4).

In determining whether Mr. Harris's sentence should be reduced, the Court will begin by re-calculating Mr. Harris's offense level as follows—without disturbing any of the adjustments previously found by Judge Nevas at Mr. Harris's sentencing and resentencing:

| | Offense Level Computation<br>Conspiracy to Distribute Narcotics (Count One) |
|---|---|
| BASE Offense Level | 24<br>(based on conspiracy to distribute > 1.5 kilograms of cocaine base, using a 1:1 crack-powder ratio) |
| Specific Offense Characteristics | + 2<br>(based on firearm use as part of conspiracy by "underlings") |
| Adjustment for Role in Offense | + 4<br>(leader and organizer of five or more people) |
| Adjustment for Use of Minor | +2<br>(G. Jimenez was a minor when she first began selling drugs for Mr. Harris) |
| Adjustment for Obstruction of Justice | +2<br>(based on Mr. Harris's perjury during his trial testimony) |
| ADJUSTED Offense Level | 34 |

Under the current Sentencing Table, the Sentencing Guideline Range for a defendant with a criminal history category of I and an offense level of 34[3] is a term of imprisonment of 151-188 months.

---

[2] Many courts, including courts that have held First Step Act hearings in this District, now use a 1:1 ratio for crack cocaine and powder cocaine. *See United States v. Lyle Jones*, No. 3:99-cr-264-6 (VAB), 2019 WL 4933578, at *15 n.2 (collecting cases) (D. Conn. Oct. 7, 2019).

[3] In keeping these enhancements, the Court recognizes that there are legitimate issues regarding whether some of them should apply. *See, e.g.*, Def.'s Mem. at 31 ("A total offense level of 34 and a Criminal History Category I results in a Guidelines range of 151 to 188 months. It would be more appropriate, however, for the Court not to apply the enhancement for use of a minor upon resentencing, given Judge Nevas's finding at co-defendant John Foster's resentencing that no one in the conspiracy was responsible for bringing the minor, Glenda Jimenez, into drug dealing. Without the use of a minor enhancement, Mr. Harris's total offense level would be 32. A total offense level of 32 and a Criminal History Category I results in a Guidelines range of 121 to 151 months.") (internal emphasis omitted).

Before determining whether Mr. Harris's sentence should be reduced, and if so, by how much, the Court also will consider all of the relevant factors under 18 U.S.C. § 3553(a) and will consider "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (paragraph 2) of this subsection." *See Rose*, 379 F. Supp. 2d at 234 ("[E]ven if consideration of § 3553(a) factors is not expressly required by the First Step Act, the Court concludes that it is appropriate to use that familiar framework to guide the exercise of discretion conferred by the First Step Act.").

Under this statute, the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Under paragraph (2) of this subsection, the sentence must "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

In addition, the statute requires consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences available," the relevant "sentencing range established" for the offense, and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3),(4), and (6).

In doing so, the Court recognizes the serious criminal behavior considered by Judge Nevas that prompted a life sentence:

> During the period from 1992, when [Mr. Harris] graduated from
> high school, to the date of his arrest, he basically never worked, but

> had a very, very excessive lifestyle in which he traveled extensively, drove luxury cars, owned guns, body armor, and had virtually no verifiable income during this period, which would suggest to the Court that because of his involvement in this extensive drug-dealing operation, he delegated to subordinates, all of the heavy lifting, as it were. He had street sellers. He had a network of street sellers, block lieutenants and others, who essentially did his dirty work, but he ever got his hands dirty. . . .
>
> He essentially insulated himself from the people who were in the street selling the drugs.

Resentencing Tr. at 105:3-15, 106:5-6.

Judge Nevas likely, and rightfully, had serious concerns about the violent nature of this drug enterprise, as reflected in his application of the murder cross reference at Mr. Harris's resentencing. Indeed, the Government's successful prosecution of this far-ranging and devastating criminal enterprise at the P.T. Barnum Housing Project and the lengthy prison sentences that followed have made Bridgeport and its residents safer. There is nothing in this record to suggest otherwise.

Put another way, a reconsideration of the length of Mr. Harris's sentence cannot and should not be construed as either a reconsideration of his underlying conviction or a reconsideration of the propriety of a lengthy sentence for this conviction. The issue is not whether Mr. Harris should have served a lengthy prison sentence. Instead, having determined that Mr. Harris is eligible for consideration of relief under the First Step Act, the issue is whether the length of that sentence should be reduced, having taken into consideration his various criminal acts and all of the other factors relevant under 18 U.S.C. § 3553(a).

As a result, having considered all of the relevant factors under 18 U.S.C. § 3553(a), including the fact that Mr. Harris has already served over 238 months of his sentence (without any consideration of the applicability of good-time credits), a sentence reduction from life to a

sentence of time served would not be inappropriate, especially given the re-calculated Sentencing Guidelines range of 151-188 months.

This reduction takes into consideration Mr. Harris's significant drug activity as well as the violent acts of which there was concern he otherwise participated, regardless of charge or conviction, and is sufficient but not greater than necessary to serve the purposes of a criminal sentence. *See* 18 U.S.C. § 3553(a). Furthermore, given that several of Mr. Harris's co-defendants have recently had their sentences reduced, this reduction also avoids unwarranted sentence disparities. *See Powell*, 2019 WL 4889112; *United States v. Damon Walker*, Order Reducing Sentence, No. 3:99-cr-264-19, ECF No. 2536 (Aug. 27, 2019); *United States v. Lonnie Jones*, Order Reducing Sentence, No. 3:99-cr-264-3, ECF No. 2558 (Aug. 27, 2019); *United States v. Kenneth Richardson*, Ruling and Order on First Step Act Mot. for Immediate Release or Resentencing, No. 3:99-cr-264-8, ECF No. 2585 (Oct. 3, 2019); *United States v. Lyle Jones*, Ruling and Order on First Step Act Mot. for Immediate Release or Resentencing, No. 3:99-cr-264-6, ECF No. 2592 (Oct. 7, 2019); *United States v. Leonard Jones,* Ruling and Order on First Step Act Mot. for Immediate Release or Resentencing, No. 3:99-cr-264-05, ECF No. 2625 (Dec. 19, 2019).

The Court has also considered Mr. Harris's rehabilitation efforts and his behavior while incarcerated, and both support a reduction of his sentence. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.").

In his nearly two decades of incarceration, Mr. Harris has only incurred five[4] disciplinary infractions. Def.'s Mem. at 37; *see also* Ex. 9: Inmate Discipline Data, ECF No. 2621-2 (listing the infractions). Additionally, Mr. Harris has used his time wisely while incarcerated by taking "advantage of the educational courses, vocational training, and other programming that has been available to him." Def.'s Mem. at 37; *see* Gov't Opp. at 3 ("While the defendant has had disciplinary infractions—including one as recently as this year—he also has completed a significant number of educational courses, despite no prospect of release."); *see also* Inmate Education Data (listing the over forty education courses completed by Mr. Harris); Ex. 6, ECF No. 2605-5 (consisting of various certificates awarded to Mr. Harris).

One of Mr. Harris's supervisors at the United States Penitentiary in Lewisburg, PA ("USP Lewisburg"), noted of Mr. Harris:

> While working he has put forth all the effort that has been asked of him by staff. He does good quality of work and the quantity of [sic] is good also. He has initiative and interest and is eager to learn new things. He has the ability to learn and to help other inmates as work is being done. . . . He has helped thru [sic] out the institutions to help repair and replace items and projects as needed. . . . A lot of projects that he has worked on has been to make the institution safer for staff as well as inmates.

Ex. 3: Letter from Timothy Morseman, ECF No. 2605-2 (undated).

Mr. Harris also graduated from the Nonresidential Men of Influence Self-Improvement and Pre-Release Program at USP Lewisburg, and staff sponsor Dr. Doug Contri wrote of him:

> Your completion of this program demonstrates your ability to conform to a new and responsible way of living, personal discipline, being a positive example to others, and setting productive goals for yourself. . . . We thank you for your hard work and dedication to excellence, and we wish you good luck in all of your future endeavors.

---

[4] Although Mr. Harris's Bureau of Prisons record shows six disciplinary infractions, the last one was recently expunged from his record, because the "hazardous tool" belonged to Mr. Harris's cellmate, and not Mr. Harris. *Compare* Inmate Discipline Data, ECF No. 2580-10, *with* Ex. 9: Inmate Discipline Data, ECF No. 2621-2.

Ex. 4: Letter from MOI Program Staff Sponsors, ECF No. 2605-3 (Dec. 10, 2008).

Finally, Mr. Harris has established a re-entry plan to facilitate his return to the community—he plans to live in a small town in Arizona with his mother, where she can support him and where he can start anew. Def.'s Mem. at 34.

Although Judge Nevas imposed a $25,000 fine at resentencing, he did not articulate any findings based on Mr. Harris's current financial condition or ability to pay a fine. Significantly, Judge Nevas did not impose a fine at Mr. Harris's original sentencing because he found that Mr. Harris was "unable to pay a fine." Sentencing Tr. at 29:6 (Apr. 5, 2001). Because Mr. Harris has been incarcerated since early 2000, the Court does not find that Mr. Harris has the ability to pay the fine. *Cf. United States v. Walker*, 262 F. App'x 303, 309 (2d Cir. 2008) (finding error in imposing a $100,000 fine on Quinne Powell, Mr. Harris's codefendant, without explaining the reasons for the fine or why he found that Mr. Powell had the ability to pay the fine). Consequently, the Court will not impose a fine now.

Given the time Mr. Harris has already served,[5] the Court accordingly reduces Mr. Harris's three concurrent life sentences to a sentence of **TIME SERVED**, a sentence consistent with the current Sentencing Guidelines and the broad remedial purpose of the First Step Act.

Judge Nevas imposed a five-year term of supervised release, and imposed mandatory and standard conditions 1, 2, 4, 5, and 8. Amended Judgment at 1-2. A term of supervised release thus is appropriate. To the extent that a term of supervised release needs to be re-imposed, the

---

[5] Mr. Harris has served over 238 months, without any consideration of any good-time credits otherwise available. *See* 18 U.S.C. § 3624(b) ("a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the court"). Mr. Harris thus has served a sentence far in excess of the top of the newly re-calculated Sentencing Guidelines range of 188 months.

Court does so now, with all the standard and mandatory conditions required under 18 U.S.C. §

3583(d) and U.S.S.G. § 5D1.3. Special conditions will be added as the Court deems appropriate.

    If Mr. Harris violates any term of his supervised release, he will be subject to up to two

(2) additional years of incarceration for each violation, without credit for any time already spent

on supervised release.

## IV.    CONCLUSION

    For the reasons explained above, the Court (1) **GRANTS** the motion; (2) **ORDERS** that

Mr. Harris's sentence of incarceration be **REDUCED** to **TIME SERVED**; and (3) **IMPOSES** a

term of supervised release of **FIVE (5) YEARS**.

    The Clerk of Court is respectfully directed to file an amended judgment and terminate

this case.

    **SO ORDERED** at Bridgeport, Connecticut, this 13th day of January, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE